IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DWAYNE JAHQUAN MEANS,         )
                              )
        Petitioner,           )
                              )
    v.                        )        1:18CR115
                              )        1:20CV56
UNITED STATES OF AMERICA,     )
                              )
        Respondent.           )
```

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This Court (per United States District Judge William L. Osteen, Jr.) previously entered a Judgment against Petitioner imposing, inter alia, a prison term of 54 months followed by a supervised release term of three years, upon his guilty plea to the offense (committed on or about December 6, 2016) of receiving a firearm while under indictment for a felony, in violation of 18 U.S.C. §§ 922(n) and 924(a)(1)(D). (Docket Entry 26; see also Docket Entry 1 (Indictment); Docket Entry 12 (Plea Agt.); Docket Entry 13 (Factual Basis); Docket Entry 40 (Plea Hrg. Tr.); Docket Entry 41 (Sent'g Hrg. Tr.).)[1] Petitioner did not appeal (see Docket Entry 29, ¶ 8), but did timely file a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, which alleged these two grounds for relief:

1) "Actual Innocence of Title 18[, Section] 922(n) conviction under 5th Amendment[,] Violation of Due Process" (id., ¶ 12(Ground

---

[1] Parenthetical citations refer to Petitioner's above-captioned federal criminal case.

One); see also id., ¶ 12(Ground One)(a) ("[Petitioner] did not 'know his status' upon entering guilty plea. . . . Thus[, his] plea was 'unknowingly and unintelligently made' and the co[n]viction cannot stand. . . . [Petitioner] did not 'know' he was a prohibited person; the [I]ndictment failed to apprise [Petitioner] of 'knowledge of status' element in 18 U.S.C. § 922(n) charge; being the state indictment was held under seal while [Petitioner] was on bond . . . ." (standard capitalization applied) (adverting to Rehaif v. United States, ___ U.S. ___, 139 S. Ct. 2191 (2019)));

2) Ineffective Assistance of Counsel for [n]ot informing [Petitioner] of consequences in plea of guilty, [a]nd cit[ing] wrong penalty to induce plea of guilty" (id., ¶ 12(Ground Two); see also id., ¶ 12(Ground Two)(a) ("Petitioner was denied 6th Amendment protection due to [his a]ttorney's lack of performance to fully inform [Petitioner] of consequences of guilty plea and [because his attorney] lied to [Petitioner], by falsely telling Petitioner that 'He [sic] would be facing a maximum of 10 years for a 18[ ]U.S.C.[ § ]922(n) violation,' when the statutory maximum was 5 yrs. This misrepresentation induced Petitioner to plea to 18[ ]U.S.C. [§] 922(n) charge, which Petitioner is 'actually innocent' of because 'he did not know his status' at time of plea, and that it was necessary 'element' of the offense. Attorney quoted penalty for 18 U.S.C. [§] 922(g) which Petitioner was not indicted for.

2

[Petitioner] would've not plead [sic] guilty had it not been for the attorney lying to Petitioner and not having discussed the knowledge of all elements with Petitioner in order for a conviction on [I]ndictment." (standard capitalization and spacing applied) (unmatched quotation mark and stray comma omitted))).

The Court (per the undersigned United States Magistrate Judge) subsequently stayed disposition of the Section 2255 Motion, pending the final resolution of an appeal of another case addressing Rehaif-related issues. (See Docket Entry 32; Docket Entry 34.) After the Supreme Court resolved the case which had led to the stay – in Greer v. United States, ___ U.S. ___, 141 S. Ct. 2090 (2021) – the United States responded to the Section 2255 Motion (see Docket Entry 43 (the "Response")) and Petitioner replied (see Docket Entry 45 (the "Reply")).[2]

---

[2] Petitioner recently completed his prison term and began his three-year supervised release term (which extends until January 17, 2026). See https://www.bop.gov/inmateloc (search for "Dwayne Jahquan Means") (last performed March 6, 2023) (documenting release date of January 17, 2023). Because Petitioner remained imprisoned when he filed the Section 2255 Motion, he satisfied the "in custody" requirement of Section 2255. See United States v. Bryson, 981 F.2d 720, 726 (4th Cir. 1992) ("Whether an individual is in custody for § 2255 purposes is determined at the time the habeas action is filed."). Nor has Petitioner's collateral attack on his conviction become moot, particularly given his ongoing service of his supervised release term. See id. (holding that, when "[the petitioner] attacks the validity of the conviction through his § 2255 motion, expiration of his sentence does not moot the action," unless "there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction" (internal quotation marks omitted)); see also United States v. Ketter, 908 F.3d 61, 66 (4th Cir. 2018) ("Although the
(continued...)

3

Ground One fails as a matter of law for at least three reasons. First, "in *Rouse v. Lee*, 339 F.3d 238, 255 (4th Cir. 2003), th[e United States Court of Appeals for the Fourth Circuit] noted that 'claims of actual innocence are not grounds for habeas relief even in a capital case.'" Buckner v. Polk, 453 F.3d 195, 199 (4th Cir. 2006); see also, e.g., Curtis v. Virginia, No. 7:20CV414, 2021 WL 4807627, at *10 (W.D. Va. Oct. 14, 2021) (unpublished) ("[T]here is no recognized freestanding federal claim of actual innocence. . . ."); Byrd v. Millis, No. 18CV332, 2019 WL 4723374, at *5 (M.D.N.C. Aug. 30, 2019) (unpublished) (Peake, M.J.) ("[The p]etitioner's fourth claim for relief should be denied to the extent that he attempts to raise actual innocence as a standalone claim."), recommendation adopted, 2019 WL 4723240 (M.D.N.C. Sept. 26, 2019) (unpublished) (Osteen, J.), appeal dismissed, 794 F. App'x 322 (4th Cir. 2020); Sanford v. Clarke, No. 18CV303, 2019 WL 472256, at *9 (E.D. Va. Feb. 6, 2019) (unpublished) ("Actual innocence is not a freestanding claim in

---

[2](...continued)
underlying prison sentence has been served, a case is not moot when an associated term of supervised release is ongoing, because on remand a district court could grant relief to the prevailing party in the form of a shorter period of supervised release." (emphasis omitted)). Finally, any failure of Petitioner to receive a copy of this Recommendation and a notice of his right to file objections, due to his noncompliance with Local Rule 11.1(b) (as incorporated by Local Rule 57.1), which requires him to update his address, need not prevent a final ruling after the objection period expires. See, e.g., United States v. Weeks, Crim. No. 10-21, 2014 WL 12607739, at *1 (E.D. Ky. July 7, 2014) (unpublished).

4

habeas corpus proceedings. Therefore, to the extent that [the petitioner] intends Claim 4 to be such a freestanding claim, it is not cognizable or reviewable on the merits." (internal citations omitted)), appeal dismissed, 778 F. App'x 269 (4th Cir. 2019).

Second, the Response properly points out that:

> Petitioner's [Ground One] claim centers around the requirement, articulated with respect to § 922(g) in *Rehaif*, that the government prove a defendant knew he was a 'prohibited person' when he received and/or possessed, as applicable, a firearm. . . . Petitioner pled guilty to § 922(n), receipt of a firearm while under indictment, not § 922(g). . . . [T]hus *Rehaif* has no effect on Petitioner's conviction.

(Docket Entry 43 at 6 (emphasis added) (citing Miller v. United States, Nos. 3:20CV138, 3:11CR62-1, 3:11CR192-1, 2020 WL 7050373, at *4 (S.D.W. Va. Nov. 4, 2020) (unpublished), recommendation adopted, 2020 WL 7050361 (S.D.W. Va. Dec. 1, 2020) (unpublished)).)

The Miller opinion (cited in the Response) elaborates on the rationale for that conclusion:

> *Rehaif* has no application here. [Petitioner] was convicted for possessing a firearm while under indictment pursuant to § 922(n), which is a different statutory provision than the one at issue in *Rehaif*. . . . [Section] 922(n) was unchanged by the Supreme Court's decision in *Rehaif*, because [Section 922(n)] already required proof of the "knowing" element. In *United States v. Forbes*, [64 F.3d 928 (4th Cir. 1995),] the Fourth Circuit held that defendants must have knowledge of their pending indictment to be guilty under § 922(n). The Fourth Circuit took great pains to distinguish the holding of *Forbes* from its decision in [*United States v.* ]*Langley*[, 62 F.3d 602 (4th Cir. 1995),] concerning § 922(g), which *Rehaif* later overruled.

Miller, 2020 WL 7050373, at *4 (internal citations omitted).

5

In particular, the Fourth Circuit (in Forbes) emphasized that "the penalty section applicable to § 922(n) offenses, § 924(a)(1)(D), prescribes imprisonment and a fine for 'whoever willfully violates' [Section 922(n)] . . . . '[W]illfully,' especially in a statute in which Congress simultaneously uses 'knowingly,' connotes a more deliberate criminal purpose . . . ." Forbes, 64 F.3d at 933 (internal footnote omitted) (emphasis added). As a result, the Fourth Circuit "interpret[ed 'willfully'] modestly, by requiring bare knowledge of the single fact [of a pending indictment, which] separates [] gun purchases [or acquisitions which subject a person to prosecution under Section 922(n)] from the hundreds of otherwise-identical lawful purchases [or acquisitions] that happen every day." Id. Accordingly, since Forbes (and thus long before Rehaif), Section 922(n) has included a mens rea of willfullness (understood as a defendant's knowledge not only of the receipt of a firearm but also of the pendency of a felony indictment). "As the elements necessary to establish guilt under § 922(n) remain untouched by *Rehaif*," Miller, 2020 WL 7050373, at *4, Petitioner cannot obtain collateral relief from his guilty plea based on Rehaif.[3]

---

[3] Here, consistent with Forbes, the Indictment charged that Petitioner, while "then under indictment for a crime punishable by imprisonment for a term exceeding one year, did willfully receive a firearm" (Docket Entry 1 at 1 (emphasis added)), and Judge Osteen advised Petitioner during the plea hearing that, if he chose to proceed to trial, the United States would have to prove not only
(continued...)

Third (again as the Response correctly comments), "[t]o the extent Petitioner has any claim regarding the knowledge-of-status element applicable to his § 922(n) offense, Petitioner has defaulted it." (Docket Entry 43 at 7.)  More specifically, when a defendant (like Petitioner) fails to challenge his guilty plea on direct appeal, the doctrine of procedural default will bar a collateral attack on that plea.  See <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998) (holding that "voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); <u>see also</u> <u>United States v. Timmreck</u>, 441 U.S. 780, 784 (1979) (observing that "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas" (internal footnote omitted)).  "A procedural default . . . may be excused in two circumstances:  where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice' resulting therefrom."  <u>United States v.</u>

---

<sup>3</sup>(...continued)
that, at the time of the offense, "[he] w[as] under indictment for a crime punishable by imprisonment for a term exceeding one year" (Docket Entry 40 at 13), <u>but also</u> that "[he] <u>willfully and knowingly</u> received a firearm as described in the [I]ndictment" (<u>id.</u> (emphasis added); <u>see also</u> <u>id.</u> (documenting Petitioner's acknowledgment that he "underst[oo]d the elements of the offense charged in the [I]ndictment," that he "further underst[oo]d that by pleading guilty to this offense[ he was] admitting to the elements of the offense as those facts are described in the [I]ndictment," that he did not "have any questions," that he pleaded "[g]uilty," and that he so pleaded "because [he was], in fact, guilty")).

7

Fuqit, 703 F.3d 248, 253 (4th Cir. 2012) (quoting Bousley, 523 U.S. at 622). As the United States has argued (see Docket Entry 43 at 9-19), Petitioner cannot make the requisite showing.

To begin, Petitioner cannot show cause for his procedural default of Ground One, by stating – in answer to the Section 2255 form question asking him to "explain why" he "did not raise this issue in [his] direct appeal" (Docket Entry 29, ¶ 12(Ground One)(b)(2)): "Due to [the r]ecent Supreme Court [d]ecision in [Rehaif,] it was not available to [a]ttorney of [Petitioner] to raise." (Id.) "[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim," Reed v. Ross, 468 U.S. 1, 16 (1984); however, "[w]here the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of . . . finality counsel against labeling alleged unawareness of the objection as cause for a procedural default," Engle v. Isaac, 456 U.S. 107, 134 (1982) (internal footnote omitted).

In Bousley, the Supreme Court further explained the meaning of the phrase "reasonably available" and the concept of "futility" in the procedural default context:

> [The petitioner] argues that the legal basis for his claim was not reasonably available to counsel at the time his plea was entered. This argument is without merit. While we have held that a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default, Reed[],

8

> 468 U.S. [at] 16[], [the] petitioner's claim does not qualify as such. The argument that it was error for the [d]istrict [c]ourt to misinform [the] petitioner as to the statutory elements of [the offense to which he entered a plea] was most surely not a novel one. Indeed, at the time of [the] petitioner's plea, the Federal Reporters were replete with cases involving challenges [of the sort he proposes]. [The p]etitioner also contends that his default should be excused because . . . any attempt to attack [his] guilty plea would have been futile. This argument, too, is unavailing. As we clearly stated in Engle[], "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." [Engle, 456 U.S.] at 130[] n.35[]. Therefore, [the] petitioner is unable to establish cause for his default.

Bousley, 523 U.S. at 622–23 (certain quotation marks, some internal citations, and footnote omitted).

Courts around the country (including in the Fourth Circuit) have applied Bousley to conclude that a Rehaif-based "knowledge of status" argument does not qualify as "novel" and thus does not establish "cause" excusing default, as exemplified here:

> [The petitioner]'s claim is virtually identical to Bousley, in that numerous courts have opined on the "knowledge of status" argument [the petitioner] asserts here prior to Rehaif. In fact, "knowledge of status" arguments have been a consistent feature of statutory interpretation cases since at least the 1950's. In other words, [the petitioner]'s claim is hardly novel . . . . Thus, [the petitioner]'s claim does not overcome procedural default based upon cause and prejudice, because he cannot show that his knowledge of status argument is sufficiently novel.

Gray v. United States, No. 3:19C607, 2020 WL 127646, at *3 (M.D. Tenn. Jan. 10, 2020) (unpublished) (internal citations omitted); accord, e.g., Wilson v. United States, Nos. 1:14CR482, 1:19CV909,

2022 WL 4227368, at *2-3 (M.D.N.C. May 25, 2022) (unpublished), recommendation adopted, 2022 WL 4221338 (M.D.N.C. Sept. 13, 2022) (unpublished) (Osteen, J.); United States v. Asmer, Crim. No. 3:16-423, 2020 WL 6827829, at *5-7 (D.S.C. Nov. 20, 2020) (unpublished), appeal dismissed, No. 21-6064 (4th Cir. Sept. 29, 2021) (slip op.); McCauley v. United States, Nos. 1:13CR423, 1:17CV666, 2020 WL 5881270, at *6-7 (M.D.N.C. Sept. 4, 2020) (unpublished), recommendation adopted, 2020 WL 5821074 (M.D.N.C. Sept. 30, 2020) (unpublished) (Schroeder, C.J.); Wilson v. United States, Nos. 3:14CR254, 3:19CV280, 2020 WL 4950930, at *8 (W.D.N.C. Aug. 24, 2020) (unpublished), appeal dismissed, No. 20-7436, 2020 WL 9148121 (4th Cir. Nov. 30, 2020) (unpublished); see also Cruickshank v. United States, 505 F. Supp. 3d 1127, 1133 (W.D. Wash. 2020) (citing Gray and rulings across the nation, in holding "that *Rehaif* did not create a . . . novel rule that would support a finding of cause"), appeal dismissed, No. 20-36061, 2021 WL 5851076 (9th Cir. July 2, 2021) (unpublished); but see, e.g., United States v. Dempster, Crim. No. 14-24, Civ. No. 20-1424, 2022 WL 486791, at *3 (D. Md. Feb. 17, 2022) (unpublished) (finding cause for default of Rehaif claim, but denying relief for want of proof of actual prejudice).[4]

---

[4] Despite the Response's extensive argument about Petitioner's obligation to show "cause" to excuse his default of Ground One and the insufficiency of his putative novelty argument (see Docket Entry 43 at 10-11), the Reply does not develop a coherent "cause" counter-argument (see Docket Entry 45 at 1-2). Instead, the Reply appears to repeat allegations of Grounds One and Two, before
(continued...)

10

Nor could Petitioner carry his burden of showing actual prejudice[5] or actual innocence to bypass the procedural bar. As an initial matter, the Factual Basis details evidence establishing that Petitioner acquired the firearm charged in the Indictment well after he "was indicted by a grand jury in Rowan County on December 7, 2015, for the offense of robbery with a dangerous weapon in 15CRS 55497." (Docket Entry 13 at 2.) Petitioner (both through counsel and personally) agreed with those facts at his plea

---

[4](...continued)
vaguely asserting for the first time that "Petitioner ask[ed his a]ttorney to appeal [the] conviction[, but n]ever had anything done in motion [sic] for [his] request; [Petitioner] never received any paperwork or documents from [his a]ttorney." (Id. at 1-2; see also id. at 2 ("I had called his office, wrote him letters, even had my mother contact his office only to have his secretary to say they will get intouch [sic] which they never have.").) Notably, the Reply does not state when Petitioner supposedly "ask[ed his a]ttorney to appeal" (see id. at 1-2); moreover, pursuant to Federal Rule of Appellate Procedure 4(b)(1)(A), Petitioner's deadline to appeal ran on February 8, 2019, i.e., 14 days after the entry of his Judgment on January 25, 2019 (see Docket Entry 26 at 1), but the Supreme Court did not decide Rehaif until June 21, 2019, see Rehaif, ___ U.S. at ___, 139 S. Ct. at 2191. Petitioner thus could not have requested a timely appeal based on Rehaif. Under these circumstances, Petitioner has not established that ineffective assistance of counsel caused his default of Ground One. See generally Cobbs v. Cartledge, No. CV 9:15-3038, 2016 WL 9019648, at *11 (D.S.C. June 16, 2016) (unpublished) (holding that "conclusory and self-serving claims are insufficient to show [that] counsel was ineffective"), recommendation adopted, 2016 WL 9019649 (D.S.C. Oct. 11, 2016) (unpublished), appeal dismissed, 678 F. App'x 134 (4th Cir. 2017).

[5] Because Petitioner cannot satisfy the "cause" prong of the "cause and actual prejudice" exception, "the [C]ourt need not proceed to analyze the [actual] prejudice prong . . . . However, for the sake of thoroughness, th[is Recommendation] will proceed to consider whether . . . he can demonstrate . . . actual prejudice." Asmer, 2020 WL 6827829, at *7.

11

hearing.  (See Docket Entry 40 at 14-15; see also id. at 15 ("I will find in [Petitioner's] case that his plea of guilty is supported by an independent basis in fact containing each of the essential elements of the offense."); see also Docket Entry 20, ¶ 11 ("[Petitioner] stated he agrees with the information contained in the Factual Basis.").)  Furthermore, at the plea hearing, Petitioner declared – under oath (see Docket Entry 40 at 3) – that he understood (and had no questions about) the willfulness element of the Section 922(n) offense (which, as previously explained, requires knowledge of a pending felony indictment), that he knew his guilty plea constituted an admission of that (and every other) offense element, and that he pleaded guilty due to his factual guilt.  (See id. at 12-13.)  Finally, at sentencing, Petitioner "apologize[d] for being in [Judge Osteen's] courtroom" (Docket Entry 41 at 33), conduct inconsistent with the position Petitioner now would have the Court accept, i.e., that he innocently acquired the firearm charged in the Indictment, while unaware of his pending, state-court, armed-robbery indictment.

In the face of the foregoing record, Ground One relies on the bald assertion that "the state indictment was held under seal while [Petitioner] was on bond . . . ."  (Docket Entry 29, ¶ 12(Ground One)(a).)  The Response, however, demonstrates (through citation to appended state court documents) that "Petitioner's counsel was served with notice of the [state-court, armed-robbery] indictment

12

on or about December 11, 2015." (Docket Entry 43 at 15-16 (citing Docket Entry 43-1 at 1).) Petitioner's Reply, in turn, makes no effort to rebut that evidence, which eviscerated his unsupported statement about purported sealing of his state-court indictment. (<u>See</u> Docket Entry 45 at 1-2; <u>see also</u> Docket Entry 44 at 1 (advising Petitioner that "failure . . . to file counter-affidavits in rebuttal within the time allowed may cause the [C]ourt to conclude that the government's contentions are undisputed" and to "dismiss [his] suit or render judgment against [him]").)

To sum up (once more in the apt words of the Response), Ground One fails as a matter of law, because "the record evidence establishes Petitioner was aware of his prohibited status when he received the firearm resulting in his § 922(n) charge and conviction. That is sufficient to defeat any knowledge-of-status claim." (Docket Entry 43 at 17; <u>see also</u> <u>id.</u> at 22 ("Petitioner's argument that he is 'actually innocent' of the § 922(n) offense because the state court indictment was under seal is patently incredible. . . . [T]here is no indication from the state court documents that [said] indictment was under seal. To the contrary, the state court record reflects that [his] counsel was served with notice of th[at] indictment only days after its return.").)

Ground Two fares no better. To prevail on Ground Two, Petitioner must prove that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice

13

resulted.  See Strickland v. Washington, 466 U.S. 668, 687-96 (1984).  Making such a showing "is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also id. ("[T]he standard for judging counsel's representation is a most deferential one."); Hill v. Lockhart, 474 U.S. 52, 59 (1985) ("[T]o satisfy [Strickland's] 'prejudice' requirement, [a petitioner convicted by guilty plea] must show that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial.").

To the extent Ground Two rests its ineffectiveness claim on the allegations that (A) "Petitioner is 'actually innocent' [] because 'he did not know his status' at time of plea, and that it was necessary 'element' of the offense" (Docket Entry 29, ¶ 12(Ground Two)(a) (standard capitalization applied)), and (B) "[Petitioner] would've not plead [sic] guilty had it not been for the attorney . . . not having discussed the knowledge of all elements with Petitioner in order for a conviction on [I]ndictment" (id. (standard capitalization applied) (stray comma omitted)), the record conclusively contradicts those allegations (as documented in the discussion of Ground One).  Most significantly in that regard, after Judge Osteen advised Petitioner during the plea hearing that, if he chose to proceed to trial, the United States would have to prove not only that, at the time of the offense, "[he] w[as] under

14

indictment for a crime punishable by imprisonment for a term exceeding one year" (Docket Entry 40 at 13), <u>but also</u> that "[he] <u>willfully and knowingly</u> received a firearm as described in the [I]ndictment" (<u>id.</u> (emphasis added)),[6] Petitioner swore that he "underst[oo]d the elements of the offense charged in the [I]ndictment" (<u>id.</u>), that he "further underst[oo]d that by pleading guilty to this offense[ he was] admitting to the elements of the offense as those facts are described in the [I]ndictment" (<u>id.</u>), that he did not "have any questions" (<u>id.</u>), and that he pleaded "[g]uilty" (<u>id.</u>), "because [he was], in fact, guilty" (<u>id.</u>).

The record similarly forecloses Ground Two's attempt to predicate an ineffectiveness claim on the allegations that (A) Petitioner's counsel "lied to [Petitioner], by falsely telling Petitioner that 'he [sic] would be facing a maximum of 10 years for a [Section] 922(n) violation.' when the statutory maximum was 5 yrs" (Docket Entry 29, ¶ 12(Ground Two)(a) (standard capitalization and spacing applied); <u>see also</u> <u>id.</u> ("Attorney quoted penalty for [Section] 922(g) which Petitioner was not indicted for." (standard capitalization applied))), and (B) "[t]his misrepresentation induced Petitioner to plea to [the Section] 922(n) charge" (<u>id.</u>; <u>see also</u> <u>id.</u> ("[Petitioner] would've not plead [sic] guilty had it not been for the attorney lying to Petitioner . . . .")). For

---

[6] Willfully receiving a firearm in this context has, for decades, been understood to entail knowledge of the pendency of the felony indictment. <u>See</u> <u>Forbes</u>, 64 F.3d at 932-33.

15

starters, Petitioner's Plea Agreement recites that "[Petitioner] understands that the maximum term of imprisonment provided by law for the Indictment herein is not more than five years . . . ." (Docket Entry 12 at 2; see also id. at 6-7 ("No agreements, representations, or understandings have been made between the parties in this case other than those which are explicitly set forth in this Plea Agreement, and none will be entered into unless executed in writing and signed by all the parties.").) Further, at the plea hearing, Petitioner swore that he "had enough time to review the [P]lea [A]greement and discuss it with [his counsel]" (Docket Entry 40 at 5-6), that he "underst[oo]d all the terms of [the P]lea [A]greement" (id. at 6), and that "th[e P]lea [A]greement represent[s] the entire agreement between [Petitioner] and the United States in this case" (id.; see also id. at 7 (denying that "anyone made any . . . promises to [him] other than those contained in the [P]lea [A]greement")).

Judge Osteen thereafter engaged Petitioner in this colloquy:

THE COURT: Now, in addition, there are certain penalties that apply by statute upon conviction. You've been charged with a violation of Title 18, United States Code, Section 922(n). The statutory penalties that apply upon conviction include the following:

A term of imprisonment of not more than five years.

. . . .

Do you understand those statutory penalties that apply upon conviction?

[Petitioner]: Yes, sir.

16

>     . . . .
>
>     THE COURT: Do you understand all of the possible penalties and consequences of this plea of guilty?
>
>     [Petitioner]: Yes, sir.

(Id. at 7-8.)

After that thorough review of the offense elements and penalties (as well as the other matters prescribed under Federal Rule of Criminal Procedure 11), Judge Osteen found (A) "that [Petitioner wa]s fully competent and capable of entering an informed plea" (id. at 14), and (B) "that [Petitioner wa]s aware of the nature of the charges and the consequences of his plea, and his plea of guilty [wa]s a knowing and voluntary plea" (id.). "[Those] findings made by [ J]udge [Osteen in] accepting [Petitioner's] plea, constitute a formidable barrier in [this] subsequent collateral proceeding[]." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Concomitantly, "[Petitioner's above-quoted] solemn declarations in open court affirming [his P]lea [A]greement carry a strong presumption of verity, because courts must be able to rely on [such] statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal brackets, citation, ellipsis, and quotation marks omitted). "Thus, in the absence of extraordinary circumstances, . . . [the C]ourt should, without holding an evidentiary hearing, dismiss any [collateral claim] that necessarily relies on allegations that contradict [Petitioner's]

17

sworn statements." Id. at 221-22. Petitioner has proved no extraordinary circumstances of that sort and thus the Court should reject Ground Two's attack on his conviction.[7]

**IT IS THEREFORE RECOMMENDED** that Petitioner's Section 2255 Motion (Docket Entry 29) be denied without issuance of a certificate of appealability.

/s/L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 7, 2023

---

[7] Alternatively, as the record quotations above definitively demonstrate, "any misinformation [Petitioner] may have received from his attorney [about the offense elements and/or the applicable prison term] was corrected by the [ C]ourt at the Rule 11 hearing, and thus [Petitioner] was not prejudiced." United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995); see also United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc) ("[I]f the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant.").

18